## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT FORT CAMPBELL

**UNITED STATES OF AMERICA**

v.                                                                                              No.: 5:09MJ-69-K

**JENNIFER A. BARDWELL**
    Defendant

### MEMORANDUM OPINION & ORDER

This matter is before the court on the motion to suppress evidence filed by the defendant, by and through counsel. The United States has responded in opposition to the motion. A hearing on the motion was held on June 3, 2009. Appearing for the United States was S.A.U.S.A. Michael T. Pfeffer. The defendant was present with her attorney, the Honorable Kenneth R. Goble, Jr. The United States presented two witnesses and one exhibit. The defendant did not present any proof. Based upon the evidence received, the court finds the following material facts and considers each of the issues presented by the motion in turn.

### FACTS

On December 4, 2008, a telephone call was received at the 911 response center at Fort Campbell. The caller related to the dispatcher that he believed that his wife in the company of his daughter were at or near the Tennessee Shoppette on post . The caller related that he believed that his wife had been or was driving and that he was about 90% sure that his wife had been drinking alcoholic beverages. Upon questioning by the 911 dispatcher, the caller identified himself as the defendant's husband, Chad Bardwell. He also advised that his wife was driving a gray '03 Ford Windstar van. He gave the dispatcher the license number of the vehicle and his (Mr. Bardwell's) cell phone number.

In response to this information, the dispatcher issued a BOLO (be on the lookout) over the radio for the subject van. In response to the BOLO; Sgt. Moore, an MP who was on patrol, began looking for the vehicle in the vicinity of the Shoppette. Upon arriving at the shoppette, he found a vehicle matching the description of the target vehicle in the parking lot.

Sgt. Moore pulled in behind the Bardwell vehicle and thereby blocking the vehicle's path of egress from the parking spot. The officer approached the defendant, identified himself, and asked if she needed assistance. It is all evidence allegedly obtained after these events that the motion seeks to have suppressed.

## THE CALLER'S STATEMENTS ARE HEARSAY

The defendant argues that the information related to the dispatcher during the 911 call is inadmissable as hearsay. This argument is without merit.

Rule 801(c) defines "hearsay" as " a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted". In other words, hearsay is the statement of an out-of-court declarant presented to prove the truth of the matter asserted. At the hearing and in response to the defendant's objection to the husband's statements to the dispatcher, the court advised counsel that the allegations of Mr. Bardwell would not be considered to prove that the defendant's was driving under the influence. It will only be considered by the fact finder, the court, to explain the actions of the dispatcher and Sgt. Moore.

## THE ADMISSION OF MR. BARDWELL'S STATEMENTS TO THE DISPATCHER VIOLATES THE DEFENDANT'S RIGHT TO CONFRONTATION

In her motion, the defendant argues that "[a]ny testimony about Husband's call would...violate Defendant's right to confrontation pursuant to the United States Constitution". The court has

2

previously concluded that Mr. Bardwell's statements to the dispatcher are not inadmissable as hearsay. Although not cited by the defendant's counsel, this argument is apparently based upon the holding of the United States Supreme Court in *Crawford v. Washington* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford*, the Court held that the admission of a testimonial statement of an out-of-court declarant violates the defendant's constitutional right to confrontation unless the prosecution shows that the witness is presently unavailable <u>and</u> the defendant has had a prior opportunity to cross-examine the witness. It is clear in the present case, that the United States has not demonstrated that Mr. Bardwell is unavailable and it is undisputed that the defendant and her attorney have not had a previous opportunity to cross-examine him. The question to be addressed, therefore, is whether Mr. Bardwell's statements to the dispatcher were "testimonial." The Supreme Court, however, did not spell out a comprehensive definition of "testimonial." 541 U.S. 36, at 69.

Subsequent to *Crawford*, the United States Court of Appeals for the Sixth Circuit addressed what is meant by the term "testimonial" in the *Crawford* context. In *United States v. Cromer* 389 F.3d 662 (2004), the court held at page 675 that:

> The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

In the present case, there is no evidence to indicate that the purpose of the caller's information was to assist in the investigating or prosecuting a crime. In this case, Mr. Bardwell did not relate to the dispatcher that a crime had been committed. Rather, it appears that his call was motivated by the concern for his wife and his daughter. A reasonable person in Mr. Bardwell's position would not

anticipate that the information relayed to the dispatcher would be used against the defendant in the investigating and prosecuting of a crime that had not occurred. The admission of Mr. Bardwell's statements to the dispatcher are not "testimonial" and therefore do not violate the defendant's constitutional right to confrontation.

## THE STOP OF THE DEFENDANT CONSTITUTED A FOURTH AMENDMENT SEIZURE

The defendant, through counsel, next argues that her confrontation by the military police constitutes a seizure in violation of the Fourth Amendment to the United States Constitution. She further argues that there was a lack of probable cause for the seizure. The court agrees with this assertion as far as it goes. However, we must consider whether the encounter was a "consensual encounter" or an "investigatory stop" pursuant to *Terry v. Ohio* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The stop of the defendant cannot be considered to be a consensual encounter because under the circumstances under which the defendant found herself, a reasonable person would not have felt that she was free to end the encounter and leave. This is so because Sgt. Moore blocked her car into its parking place.

To justify an investigatory stop pursuant to *Terry*, the officer must base the stop based on reasonable suspicion based upon articulable facts which in turn must be based upon the information in the possession of the officer at the time of the stop or seizure, i.e. at the time the Sgt Moore blocked her means of egress from the parking lot. In the case of *Florida v. J.L.* 520 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the Court considered the issue of whether an anonymous telephone tip could constitute reasonable suspicion sufficient to justify an investigatory stop.

In that case, the Court distinguished the reliability which may be assigned to an anonymous tip as opposed to a tip from an identified informant. The court stated that:

> Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if [the] allegations turn out to be fabricated... an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.
> (529 U.S. 266, at 270)

In this case, the identity of the informant was known. Mr. Bardwell gave his name and telephone number to the dispatcher along with a detailed description of the vehicle including the license number. He also accurately related where he believed that the vehicle would be found. He further revealed that the source of his reported information was from a conversation with the defendant herself. The specificity of the identification information and the accuracy of the predictive information given by the caller was sufficient to give Sgt. Moore reasonable suspicion to make an investigatory stop pursuant to *Terry*. See *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

## **FAILURE TO GIVE MIRANDA WARNINGS**

The scope of the present motion is to suppress all evidence gained subsequent to what is argued to be an unconstitutional seizure of the defendant. There is no evidence that she made any inculpatory statements prior to the investigatory stop and there is no evidence that she did not receive *Miranda* warnings. If it appears that the defendant made any custodial statements without first being *Mirandized*, that issue will be, upon proper objection, considered at trial.

## **CONCLUSION**

During the court's findings at the conclusion of the hearing, it made some comments concerning whether the evidence showed that the defendant was in "physical control" of the vehicle at the time of the stop. These comments were inappropriate and in error for two reasons, to-wit: (1) the analysis made by the court was based upon Kentucky case law when this case is a Tennessee case being prosecuted pursuant to Tennessee Code Annotated § 55-10-401; and (2) whether the defendant was in "physical control" of the vehicle does not impact upon the constitutionality of the stop and will be considered as an essential element of the offense at trial.

It is therefore **ORDERED** that the motion to suppress is **DENIED** and trial in this matter shall be held on July 8, 2009, at the United States Courthouse, 35th and Indiana, Fort Campbell, Kentucky. Trial shall commence at 9:00 a.m., C.T. or as soon thereafter as the matter may be heard.